S. H. MEADOWS v. GULF, COLORADO & SANTA FE RAILWAY COMPANY.

Decided January 9, 1908.

**1.—Damages—Destruction of Private Property—Urgent Necessity.**

One person lawfully using his own property cannot, to prevent injury thereto or the destruction thereof by another person's property also being lawfully used, lawfully injure or destroy such other person's property.

**2.—Same—Case Stated.**

A railroad company engaged in repairing a bridge across a stream cannot, for the purpose of preventing injury to the false work supporting said bridge, cut apart rafts of timber floating down the stream and so causing the loss of the timber, without compensating the owner.

Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*Crook, Da Ponte & Lawhon,* for appellant.

*J. W. Terry* and *Duff, John & Davis,* for appellee.

WILLSON, CHIEF JUSTICE.—In repairing its bridge across the Neches River, appellee so placed false work supporting same as to leave open and unobstructed only about twenty feet of the channel. At the time, appellant's assignor, the owner of certain logs, was floating same down the river to the Beaumont market. To reach Beaumont it was necessary for the logs to be floated past the bridge. The logs were rafted ten or twelve together, and in some instances two of these rafts were so fastened together as to make one body of logs. In this condition of the logs, the opening left at the bridge was not wide enough to permit the passage of the rafts. The logs having collected in large numbers above appellee's bridge, it became fearful they would float down the river in such a way as to destroy same. To prevent this threatened injury, appellee cut the fastenings holding the logs in rafts and permitted them to float loose through the opening left under its bridge. As a result, many of the logs sunk and others left the channel of the river and were lost in the sloughs of the river bottom. Appellant's suit was to recover the value of the logs so lost. The verdict of the jury was in favor of appellee, and the judgment of the court on the verdict was, that appellant take nothing by his suit.

As a part of his instructions to the jury the court charged them as follows:

"I further instruct you that if you believe from the evidence that the repairs which were being made upon defendant's bridge at the time and place in question were necessary to said bridge, and you further believe from the evidence that the false work or structure placed in said river for the purpose of making said repairs was necessary for the purpose of making said repairs, that is to say, you believe from the evidence that it was necessary to place bents of said false work or temporary structure used in making such repairs on said bridge, as close together as they were in fact placed and used in said false work or temporary structure, and that therefore it became necessary to temporarily obstruct said river, as was done by the defendant in question, for the purpose of repairing said bridge, then you are instructed that such false work or temporary structure placed in said river by defendant for said purposes of repair temporarily did not constitute an unlawful obstruction of said river; and therefore, if you further believe from the evidence that at the time in question when said logs reached

the said point where said bridge was being repaired, it became necessary for the protection of the said bridge of defendant, or the structure used in repairing the same, to prevent the same from being demolished or destroyed or damaged by the said logs jamming and pressing against the same in said river, for defendant's said servants and employes to go up on said rafts of logs and to separate and divide the same, as they did do, with a view to putting the same past and through said bridge, and that said servants and employes did no more to said rafts of logs in the way of separating and dividing the same by means of cutting the toggles and binders on said rafts than was so necessary, then you are instructed that the plaintiff can not recover in this case, even though you should find that a portion of said logs were sunk and lost in consequence of the acts of said servants and employes of defendant in so separating and dividing the said rafts of logs, and if you so find the facts to be your verdict must be for the defendant."

Without intending to indicate whether we think the assumption a correct or an innocent one, in disposing of this appeal we think we may, as the trial court did in other portions of his charge to the jury, assume that the railroad company with lawful authority in a lawful manner was making the repairs to its bridge; and that appellee's assignor was making a lawful use in a lawful manner of the river for the purpose of floating his logs to the Beaumont market. We have then for determination this narrow question: Can a person lawfully using his own property, to prevent injury thereto or the destruction thereof by another person's property, also being lawfully used, lawfully injure or destroy such other person's property? The charge complained of answers this question in the affirmative. We think it must be answered in the negative, and therefore that the charge quoted is erroneous. To hold otherwise, it seems to us, would be not only a radical departure from long established principles controlling in the determination of rights in property, but also would be to ignore the guarantee of the Bill of Rights, that no citizen of this State shall be deprived of his property except by the due course of the law of the land. (Cooley's Const. Lim., 7th ed., 244.) The right to take or damage or destroy private property for any purpose without making compensation therefor, is denied not only to the individual citizen, but also to the State itself. (Const., sec. 17.) So far as we are advised, the only instances in which it has ever been seriously claimed that the right existed, were those arising out of an overriding and urgent necessity demanding the destruction of private property to prevent the spread of a conflagration. With reference to this exceptional case, in his work on Police Power, Freund says: "The decisions make it clear that only strictest necessity will excuse the officer. They do not hold that there is an exercise of lawful governmental authority: necessity simply operates to relieve from liability for an act otherwise tortious. In justice the duty of compensation should fall upon the community; but such a duty can be called into existence by legislation only. . . . It may be doubted whether the Legislature has power to positively authorize and regu-

late such destruction without making provision for compensation." (Sec. 534.) In this State, while the power to destroy buildings to stop the spread of fire is conferred upon certain city officers, provision is made for the payment by the city of the damages suffered by the owner of the destroyed property. (Sayles' Stat., art. 535.) So, even the "overriding and urgent necessity" of the case, in this State is not an answer to the owner's claim for damages, where his property is destroyed by public officers under warrant of law to prevent the destruction of property belonging to others. Such of the authorities relied upon by appellee to support the court's charge as we have had access to, we think can not be regarded. as establishing its contention.

In Missouri Pac. Ry. Co. v. Speed, 3 Texas Civ. App., 454, the plaintiff sought to recover damages resulting to him by the obstruction by the·railroad company of his right of ingress and egress to and from his premises. The court held that the railroad company was making a lawful use of the street on which plaintiff's premises abutted, and was entitled to a reasonable time for the completion of the road-bed it was constructing along and across the public street. Until the expiration of such a reasonable time for the completion of the construction work, the court held, the owner of the abutting property had no cause of action, citing Sayles' Stat., art. 4426. The case is not authority for the proposition that had the railroad company for the protection of its construction work, destroyed the plaintiff's property it would not have been liable for its value.

In Northern Transportation Co. v. Chicago, 99 U. S., 635, the action was to recover damages for injuries alleged to have been sustained by the plaintiff in consequence of the action of the city authorities in constructing a tunnel along the line of La Salle Street and under the Chicago River where it crossed the street. The plaintiffs were the lessees of a lot bounded on the east by the street and on the south by the river, and the principal injury of which they complained was that, by the operations of the city in constructing the tunnel, they were deprived of access to their property, both on the side of the river and on that of the street, during ·the prosecution of the work. It was not claimed that ·the obstruction was a permanent one, or that it was continued during a longer time than was necessary to complete the improvement. The court held that the city in making the improvements was acting as the agent of the State in the discharge of a duty due to the public, and therefore was not answerable for consequential damages resulting to individuals, so long as they acted within the authority· conferred by the Legislature and with due care and skill in the work being done. The reason for the rule is stated by the court as follows: "The doctrine, however it may at times appear to be at variance with natural justice, rests upon the soundest legal reason. The State holds its highways in trust for the public. Improvements made by its direction or by its authority are its acts, and the ultimate responsibility, of course, should rest upon it. But it is the prerogative of the State to be exempt from coercion by suits, except

by its own consent.  This prerogative would amount to nothing if it does not protect the agents for improving highways which the State is compelled to employ.  The remedy, therefore, for a consequential injury resulting from the State's action through its agents, if there be any, must be that, and that only, which the Legislature shall give."  It is apparent that the case is not authority supporting the charge of the court in this case.

Another case relied upon (Union Pacific Ry. Co. v. Hall, 91 U. S., 343), is still less in point.  The case of Toledo, St. L. & K. C. Ry. Co. v. Loop, decided by the Supreme Court of Indiana (39 N. E., 306), cited by appellant, is more nearly in point.  There the railroad company for the protection of its tracks from trees standing near same but on the plaintiff's land, entered upon his premises and cut down the trees.  It was held to be liable to the owner for their value.  The decision was based upon the finding that the growing trees did not constitute such imminent danger to the railroad company's property as excused it from seeking permission of the owner to remove them.  The court seems to have been of the opinion that had the danger been imminent the railroad company might have entered upon the plaintiff's land and averted it, without responsibility to the owner for the value of the property.  We can not concede the correctness of such a conclusion.  So long as one person is making a lawful use of his property no other person, we think, can injure or destroy such property without thereby becoming liable to the owner for the damages he thereby suffers. The right to injure or destroy private property being lawfully used, to save from injury or destruction other private property, we think exists under no imaginable set of circumstances.

The conclusion we have reached disposes of appellant's first assignment of error, and in effect of the other assignments, except those questioning the sufficiency of the evidence to support the finding of the jury, which need not be considered.  For the error of the court in instructing the jury to find for appellee if they believed it destroyed appellant's property because it was necessary to do so to protect its own property from injury or destruction, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*